IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| VALDEZ LAMONT JORDAN, B29482, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 25-cv-39-DWD ) |
| BIANCA CONSTATINO, KEVIN JOHNSON, SHANAE GILLENWATER, DEANNA BROOKHART, | ) ) ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Valdez Lamont Jordan, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Graham Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Lawrence Correctional Center (Lawrence). Specifically, Plaintiff alleges that the defendants retaliated against his distribution of small flyers about an online petition by finding him guilty of false disciplinary charges. The Amended Complaint (Doc. 17) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must

be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

Plaintiff's initial complaint focused primarily on a procedural due process theory, and the Court dismissed the complaint as insufficient because it determined that attached disciplinary documents showed Plaintiff received adequate informal due process protections. His disciplinary sanction was just 3 months in segregation, and although aspects of the segregation may have been sufficient to support a conditions of confinement claim, the conditions were not so harsh as to suggest an atypical and significant hardship. (Doc. 12).

In the Amended Complaint, Plaintiff now pivots his focus to a theory of retaliation. Specifically, he alleges that Defendants Constatino and Brookhart retaliated against him by issuing him a false disciplinary ticket in March of 2022. He claims that the ticket was retaliation for little slips of paper that he was passing out to staff and fellow inmates asking them to go to an online petition to voice support for his fight against his wrongful conviction. (Doc. 17 at 7-8). Plaintiff alleges that this was not the first time that Brookhart retaliated against him for this type of activity. (Doc. 17 at 8). He alleges that in 2019 Brookhart had him fired from a prison job, and in 2020, she had him investigated and disciplined over his change.org petition activity. He claims that Constatino told him at the end of an interview in March of 2022 that he had upset higher ups, and they wanted him quiet. (Doc. 17 at 8). Plaintiff further alleges that Defendants Johnson and

Gillenwater falsified evidence used to determine his guilt at his hearing to deter others from supporting his petition. (Doc. 17 at 9).

Based on the allegations in the Complaint the Court designates the following counts:

> **Claim 1:** **First Amendment retaliation claim against Defendants Constatino, Brookhart, Gillenwater, and Johnson for their alleged roles in disciplining Plaintiff in retaliation for his speech at the prison**

The parties and the Court will use this designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Discussion

A successful claim for First Amendment retaliation requires that a plaintiff show, "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). An inmate may meet the *prima facie* showing by offering direct or circumstantial evidence that the defendant's actions were motivated by retaliation. *See e.g., Kidwell v. Eisenhauer*, 679 F.3d 957, 965-66 (7th Cir. 2012).

"Circumstantial evidence, however, is evidence from which a trier of fact may infer that retaliation occurred. 'Circumstantial evidence may include suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other [individuals] in the protected group.'" *Id.*

Not all speech in the prison context is considered protected. The protections afforded for inmate speech are analyzed under the *Turner* test, which dictates that a regulation that impinges on a prisoner's speech is valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). Inmates retain the right to make grievances about their conditions of confinement, to voice their need for medical care, and to participate in speech that is otherwise not disruptive to prison security. *See e.g., Watkins v. Kasper*, 599 F.3d 791, 796-799 (7th Cir. 2010) (finding that an inmate did not enjoy protection for speech that challenged a prison supervisor in his prison job, nor did he enjoy protection for speech that was disorderly and confrontational). However, speech is not protected if it threatens security or is threatening or hostile. *See e.g., Caffey v. Maue*, 679 Fed. App'x 487, 490-91 (7th Cir. 2017); *Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015) (finding an inmate engaged in unprotected backtalk when he insisted on talking to a lawyer after a guard said no).

Here, Plaintiff argues that he engaged in protected speech when he took steps to campaign for his wrongful conviction fight from within the prison. Specifically, he was passing out slips of paper to fellow inmates and staff that encouraged them to voice their support by visiting his change.org petition. He makes passing mention of the confiscation of legal materials or papers for this effort at the opening of his amended

complaint, but it does not sound like these materials were penned by him or represented his own speech. He does not adequately allege retaliation or protected speech as to these documents. Instead, the Court is focused solely on the change.org slips of paper, which were the subject of the disciplinary proceedings. Though Plaintiff does not describe the situation as clearly in his amended complaint as he did in the original, the original complaint and attached exhibits revealed that the change.org papers were seized from fellow inmates and from Plaintiff's property, and they field-tested positive for drugs. Thus, the papers both contained Plaintiff's alleged speech, and formed the basis for the discipline.

At this early juncture, the Court cannot complete the full *Turner* analysis purely on Plaintiff's allegations. It is possible that his distribution of small slips of paper could be protected, but it is also possible the prison could present a legitimate justification for restricting this sort of activity if it poses a security risk. Of course, if the prison disciplinary results are taken as true, distributing slips that an inmate contends are an exercise of speech, but which are really a cover for drug trade, would not be protected activity. For now, the Court interprets the pleading broadly in Plaintiff's favor and finds that it is at least plausible he could establish protected speech for purposes of a First Amendment claim.

Assuming for now that Plaintiff exercised protected speech, he must then demonstrate that the defendants retaliated against him for his speech activity. Courts in the Seventh Circuit have held that an inmate may pursue a retaliatory discipline claim even if the underlying discipline did not invoke a protected liberty interest. *See Black v.*

*Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994) (finding that a plaintiff could pursue a substantive due process claim about retaliatory discipline); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (due process and retaliation claims are analyzed differently, and an inmate may have a viable retaliatory discipline claim even if he does not have a valid procedural due process claim).

Here, the Court previously determined on review of the original complaint that Plaintiff did not have a sufficient procedural due process claim related to the discipline, but that finding does not foreclose his theory of retaliatory discipline. He alleges that Constatino and Brookhart agreed to discipline him as retaliation for his speech activity, and Johnson and Gillenwater doubled down by falsifying evidence. These allegations are sufficient at preliminary review to substantiate the claim against the four named defendants. It should be noted that Johnson and Gillenwater are not potentially liable purely because they participated in the allegedly tainted disciplinary process. *See Hoskins*, 395 F.3d at 375 (finding that an inmate could proceed on a theory of retaliatory discipline against those who directly retaliated, but not against adjustment committee members or those who later signed off on the discipline and did not allegedly have a role in the retaliation). To sustain the claim against Johnson and Gillenwater, Plaintiff will need to establish that their role was greater than just processing the disciplinary hearing, and that indeed, as he alleges they participated intentionally in conduct for a retaliatory reason.

DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint (Doc. 17) survives review against Defendants Constatino, Brookhart, Gillenwater, and Johnson.

The Clerk of Court is **DIRECTED** to prepare for Defendants Constatino, Brookhart, Gillenwater, and Johnson: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 17), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: October 3, 2025                /s *David W. Dugan*
                                      _____
                                      DAVID W. DUGAN
                                      United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.